# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

**Gerald M. Hill**

    **v.**                                     **No. 04-10776-RCL**

**Edward Ficco**

## MEMORANDUM IN SUPPORT OF PETITIONER'S COMPLAINT FOR HABEAS CORPUS RELIEF

## STATEMENT OF THE CASE

### A. Juvenile

On February 10th. 1978 the victim, Max Fishman, was shot and killed during an attempted robbery in Roxbury. The petitioner, then age 15, was arrested and charged with committing the murder, in Boston Juvenile Court (Boston Juvenile Court #780 214 – C, #780 215 – C).

The Juvenile Court ordered that the petitioner be evaluated by the Roxbury Court Clinic. On February 13, 1978 and February 25, 25, 1978. Dr. Alice Fleming of the Boston Juvenile Court Clinic evaluated the defendant (R.1 Appx.). Dr. Fleming disqualified herself from further professional work with the petitioner due to her personal relationship with a member of the petitioner's family (R.2-4 Appx).

---

**The record of appendix will be referred to ( R.). Only pertinent reference of the appendix will be submitted in this memorandum.**

—

Thereafter, Dr. Szymanski of the Boston Juvenile Court Clinic evaluated petitioner on February 25, 1978. Dr. Szymanski concluded that petitioner was in need of a long period of growing up emotionally in a controlled and supportive environment (R.2-4 Appx).

Petitioner's D.Y.S. social worker, Marshall Stanton, referred petitioner to the Children's Hospital Medical Center for evaluation by Dr. Felton Earls (R. 5-7 Appx.). On March 7, 1978 Dr. Earls interviewed petitioners parents (R. 5-7 Appx.). On March 20th. 1978, petitioner was evaluated by Dr. D.W. Bunshaft (R. 10-12 Appx).

On March 21, 1978 Marshall Stanton visited the Menniger Foundation in Topeka, Kansas. On September 25, 1978 Marshall Stanton recommended that the court should confine the petitioner at the Menniger Foundation ("M.F.") (R. 13 Appx).

It was agreed that funding for petitioners first year of confinement at ("M.F.") would be paid through cost sharing funds and that; D.Y.S. would pay $25,000.00, Blue Cross Blue Shield would pay $30,000.00 and the Boston Public School system would pay $10,000.00 (R. 16-17 Appx). The next two years of confinement would cost approximately $18,000.00 per year to be shared through the same three donors, D.Y.S., Blue Cross Blue Shield and the Boston Public School system.

At the hearing for finalizing the plan, DYS failed to appear (Commissioner). The plan now incomplete was rejected by the court and petitioner was bound over to Superior Court (R. 18-19 Appx).

**B. Superior Court**

On May 4, 1978 the Suffolk County Grand Jury indicted petitioner Gerald M. Hill, then age 15, for first degree murder indictment 019264 and assault with intent to rob, being armed, indictment 019265.

The trial in respect to the above-number indictments commenced before McGuire, J.J. and a jury in Suffolk Superior court on October 3, 1978. On October 17, 1978 and prior to the jury reaching a verdict, the jury sent two questions to the Judge. On the same day the petitioner pled guilty to so much of the indictment as charging murder in the second degree (R. I-019264).

The petitioner was immediately and forthwith sentenced to MCI Walpole for life with the possibility of parole (R. I-019264).

On November 26, 1980 petitioner filed a pro se, motion for appointment of counsel. On May 26, 1981 the court, McGuire, J. appointed Walter Prince to represent petitioner.

On February 22, 1982 petitioner filed a motion for a copy of the tape recordings of the Juvenile probable cause and transfer hearing. On February 25, 1982 the motion was allowed by McGuire, J. (R. VII). The clerk of courts subsequently informed petitioner that the recordings were unavailable.

Without having copies of the probable cause and transfer hearing tapes, on June 19, 1984, the petitioner filed a pro se motion to withdraw the guilty plea and for a new trial to remand and a free copy of the guilty plea (R. VIII). On April 26, 1985 the motion was denied by trial court McGuire, J. and the appeals court affirmed on January 24, 1986.

In 1995 petitioner filed his second motion for a new trial and remand. On October 9, 1996 Judge Spurlock denied the motion. However, without petitioner's consent or knowledge,

*3*

petitioner's then counsel failed to file a timely appeal or to notify petitioner of the denial (R. 57-69 Appx.).

Petitioner learned of the court's October 1996 denial of his motion in September of 1999 when petitioner retained new appellate counsel.

In October of 1999 petitioner filed a motion for reconsideration of the October, 1996 denial of his motion for a new trial and remand. The motion was denied (R. 57-69 Appx.). On January 21, 2001 the appeals court affirmed.

In June, 2001 petitioner filed his third motion for a new trial. In December, 2001 Judge Spurlock denied the motion. Petitioner filed a motion for reconsideration. On January 24, 2002, the motion was denied. On or about January 30, 2002 petitioner's appeal was entered in the Appeals Court.

**Statement of Facts**

**A. Juvenile Proceedings**

On February 10, 1978 the victim, Max Fishman, was shot and killed during an attempted robbery while delivering oil in Roxbury. Petitioner Hill, then age fifteen and his co-defendant, Hubert L. Smith, then age twenty-one, were arrested and charged with committing an attempted robbery of Mr. Fishman. Because of the severity of the alleged crime the Juvenile Court was required by G.L.C. 119, Section 61, to consider transferring the case to the Supreme Court.

The petitioner and his parents were reviewed by four doctors and one educational psychologist; (1) Dr. Bunshaft on February 20, 1978 (R. 10-12 Appx.); (2) Dr. Szymanski on February 25, 1978 (R. 2); (3) Dr. Felton Earls on February 28 1978 and March 7, 1978; (4) Dr. Carol B. Issacs on March 7, 1978 (R. 8-9 Appx.). Neither Dr. Bunshaft, Dr. Szymanski, Dr.

4

Felton nor Issacs informed petitioner prior to the court ordered evaluations that their communications were not privileged.

The court doctor/ expert Dr. Ludwig Szymanski, after examining petitioner, recommended that petitioner be placed in a secure facility capable of dealing with petitioner's needs on a long-term basis (R. 2-4 Appx.).

Dr. Szymanski was of the opinion that the petitioner "would fit into a residential school setting, catering to the needs of disturbed youngsters of his age, through "total push" consisting of appropriate education, supportive milieu...group and individual psychotherapy...(petitioners present needs for rehabilitation are specific and should be stringently met." (R. 2-4 Appx.).

Petitioner's D.Y.S. social worker, Marshall Stanton, referred petitioner to the Children's Hospital Medical Center (CHMC), to be interviewed by Dr. Felton Earls, a specialist in psychiatry (R.-13 Appx.).

On March 7, 1978, Dr. Earls interviewed both of petitioner's parents.  Dr. Earls concluded that petitioner's parents were "thoroughly committed to petitioner's welfare." (R. 5-7 Appx.).

Dr. Earls, after examining and evaluating petitioner, concluded that "a four to six month period (was) needed for complete evaluation, but it is likely that a period of at least a year or more in such a setting would be necessary for his treatment and complete rehabilitation." (R. 5-7 Appx.).

Dr. Bunshaft, after evaluating petitioner, concluded that petitioner was "at the lower limits of normal range." (R.10-12 Appx.).

Based upon the above-described experts reports and recommendations, Marshall Stanton, petitioner's assigned D.Y.S. intensive care supervisor (social worker), sought a secure

rehabilitation facility for defendant that would meet all of the requirements recommended by the above-described experts (R. 13 Appx.).

On March 21, 1978 Mr. Stanton visited the Menniger Foundation ("MF") in Topeka, Kansas. The Menniger Foundation, after reviewing petitioner's psychological records, accepted petitioner as an appropriate candidate for admission. (R. 16-17 Appx).

Likewise, D.Y.S. own staff and experts, Mrs. Battle, explicitly noted "if rehabilitation is to be the end result it is imperative that [petitioner] be dealt with as a juvenile and receive a program that is rehabilitation in education and socialization...[petitioner] needs will be best addressed at a facility for juveniles." (R. 20-22 Appx.).

The issue of funding for petitioner's confinement at Menniger aroused. On March 20, 1978 Lewis P. Williams, Director of Office of Child Placement and Registry Bureau of Programs detailed the cost sharing funding agreement between D.Y.S. (petitioner's family Blue Cross and Blue Shield, and the Boston Public School System. D.Y.S. $25,000; Blue Cross and Blue Shield $30,000; and Boston Public School System $10,000. With the funding in place D.Y.S. was expected to appear at the part "B" transfer hearing to address the court with the program details.

D.Y.S. (Commissioner) failed to appear but conveyed to the court through social worker, Marshall Stanton, that the D.Y.S. funds would be available shortly and the court rejected the program and the petitioner was transferred to Superior Adult Court. Boston Juvenile Court Judge Francis G. Poitrast relied upon Dr. Bunshaft; Dr. Szymanski; Dr. Earls and Dr. Issacs psychiatric evaluations of petitioner and his parents to waive jurisdiction and transfer the petitioner to Superior Court. (R. 18-19 Appx.).

6

**B. Superior Court**

On May 4, 1978 the Suffolk County Grand Jury indicted petitioner, then age fifteen, for first degree murder Indictment No. 019264 and assault with intent to rob, Indictment No. 019265. (R. I Appx.).

On May 10, 1978, petitioner was arraigned on the above indictments and after the arraignment petitioner spoke briefly with then Attorney John Pino about addressing the transfer issue and other matters of the case and Attorney Pino advised the petitioner that he would be addressing that issue along with others shortly on motions.

On May 22, 1978, Attorney Pino filed several motions (R. I Appx.) in Superior Court but neglected to address the Waiver of Jurisdiction Transfer matter by filing motion G.L.C. 277-47A which obligates the Superior Court to conduct a thorough examination of the transfer process and indictment.

Attorney Pino's decision not to address the important issue prompted his dismissal from the case and on September 11, 1978, Attorney Pino withdrew from the case and Attorney Reuben Dawkins was retained to represent the petitioner.

The petitioner immediately directed new counsel Dawkins to address the transfer issue and seek to have the case returned to the Juvenile Court which was the main reason for new counsel representation.

On September 25, 1978, two weeks after entry on this case, Attorney Dawkins filed two motions unbeknownst to the petitioner seeking a remand to Juvenile court not appealing the transfer order itself and requesting the court to accept a guilty plea of a lesser charge, manslaughter.

On September 27, 1978 the court McGuire J. denied both motions and without anymore investigations or motions Counsel Dawkins agreed for a trial date of October 3, 1978.

On October 3, 1978 petitioner's trial began before Judge McGuire and a jury. During the jury selection, the Commonwealth peremptorily struck seven of the eight African Americans from the jury.

Counsel for co-defendant, Hubert Smith, moved for a mistrial based upon the Commonwealth's use of peremptory challenges to remove African Americans from the petite jury. The court invited a response from the Commonwealth and the Commonwealth's reply was "It was not required to explain its use of peremptory challenges. (R. 23-28 Appx.).

After the case had been submitted to the jury, the juror's in the course of deliberations, sent three questions to the Judge. Counsel for petitioner indicated that the questions sent to the Judge from the jury would likely find co-defendant Smith guilty of murder in the first degree and find petitioner guilty of either murder one or murder two. Trial counsel then explained to petitioner that he could negotiate a deal for second degree, life with possibility of parole in fifteen years, for a change of plea to guilty.

On October 17, 1978, before the jury had reached a verdict in the case, petitioner pled guilty to so much of the indictments as charged. Murder in the second degree and assault with intent to rob.

### C.Guilty Plea

During the plea colloquy, the court read the charges as set forth in the indictments and inquired of petitioner in respect to whether the petitioner understood the nature of the charges against him (TR. 5-10).

Thereafter, the court informed the petitioner that he had certain basic

Constitutional rights afforded him in connection with the crimes alleged and that by pleading guilty these rights were given up (TR. 15). Thereafter, petitioner was sentenced to life second, imprisonment with the possibility of parole. Trial counsel filed a motion to revise and revoke the sentence, which was ultimately denied.

### D. Post Conviction

Trial counsel, Reuben Dawkins, told petitioner that he would be appealing the conviction, however, counsel abandoned petitioner without notice and without filing an appeal.

On February 22, 1982 petitioner filed a motion for copies of the tape recording of probable cause and transfer hearings. The motion was allowed on February 25, 1982 (R.VII). On June 19, 1984, petitioner filed a pro se, motion for free transcript of guilty plea hearing (R.VIII) On March 27, 1985 petitioner filed a pro se, motion to withdraw guilty plea alleging ineffective assistance of counsel, Juvenile and Trial and Transfer jurisdiction. The motion was denied on April 26, 1985. (R. VIII). On January 24, 1986 the appeals court affirmed the conviction and denial of motion to withdraw guilty plea and remand.

On May 8, 1995 Counsel Rosemary Scapicchio, for petitioner, filed a motion for new trial and remand for faulty deficient transfer findings of the Juvenile Court.

In October of 1996, Superior Court Judge Spurlock denied the motion and due to conflict between petitioner and Attorney Counsel Scapicchio, petitioner didn't learn of the denial until September of 1999.

In October of 1999, Counsel James E. Small, Jr., for petitioner, filed a belated motion for reconsideration of the denial of motion for reconsideration of the denial of the 1995 motion for new trial (R. 57-69 Appx). The motion was denied without a hearing.

On appeal, new counsel, James E. Small, Jr. failed to raise or argue on appeal the issues raised in the motion for reconsideration (R. 57-67 Appx.). The appeals Court affirmed on January 25, 2001.

On June 21, 2001, petitioner filed a pro se motion for release from unlawful restraint for Juvenile Judge acceptance of psychiatric evaluations and incorporating in findings in violation of fifth amendment, Juvenile Judge applying erroneous standard in waiver of juvenile jurisdictions, ineffective assistance of counsel, juvenile, trial and appellate counsels.

On December 11, 2001, without a hearing, the motion was denied. Petitioner filed a timely motion for reconsideration. On January 24, 2002 the motion was denied. Petitioner's appeal was entered in this court in January of 2002.

## Argument I

**1.Petitioner was denied his right to effective assistance of juvenile, trial and appellate counsels in violation of the sixth and fourteenth amendments of the United States Constitution and Article 12 of the Massachusetts Declaration of Rights. G.S.C. 263 Section 5.**

Both the Massachusetts Constitution and the United States Constitution guarantee all the petitioners their right to effective assistance of counsel, the right to effective assistance of counsel is statutorily embodied in G.L.C. 263, Section 5, a lawyer must be appointed in all cases where incarceration may result, *Gideon v. Wainwright*, 372 U.S. 335 (1963), including juvenile delinquency cases. In *Re Gault* 387 U.S. 1 (1967) and *Kent v. United States* 383 U.S. 541 (1966).

The sixth amendment right to counsel encompasses a right to effective assistance of counsel, *McMann v. Richardson,* 397, U.S. 759 771, N. 14 (1970); and *Cuyler v. Sulivan,* 446

U.S. 335, 344-345 (1980). Ineffective assistance of counsel "must be shown by specific instances".

*Commonwealth v. Thomas*, 399 Mass. 165, 169 (1987). For those instances, the Massachusetts standard is found in *Commonwealth v. Satterfield,* 373, Mass. 109, 115 (1977), and their progeny. Analysis under article 12 of the Massachusetts Declaration of Rights considers "whether there has been serious incompetence, inefficiency, or inattention of counsel, behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer."

*Commonwealth v. Saferian* 366 Mass. 89,96 (1974), (first prong) and if so, whether "there was some showing that better work might have accomplished something material for the defense." *Commonwealth v. Satterfield,* Supra 115 (emphasis supplied) (second prong). If the Massachusetts test is met, "the federal test is necessarily met as well." *Commonwealth v. Fuller* 394 Mass. 252, 256, N.3 (1985) see also *Ouber v. Guarino*, 293 f. 3d 19, 32 (C.A.) (Mass.) (2002). *Strickland v. Washington,* 466 U.S. 668 (1984), states the two prongs of the federal test under the sixth and fourteenth amendments to the United States Constitution. First a "defendant must show that counsel's representation fell below an objective standard of reasonableness" which is measured, in part, according to prevailing professional norms Id. At 687-688. Second, defendant "must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id at 694. "the type of breakdown in the adversarial process that implicates the sixth amendment is not limited to counsels performance as a whole, specific errors and omission may be the focus of a claim of ineffective assistance of counsel as well." *United States v. Cronic,* 466 U.S. 648, 659 (1984),

citing *Strickland v. Washington,* Supra, at 693-696.  See also *Massaro v. United States,* 123 S.

CT. 1690 1696 (2003) ("we do hold that failure to raise and ineffective assistance-of-counsel

claim on direct appeal does not bar the claim from being brought in a later, appropriate

proceeding").  Also see *Commonwealth v. Grant,* 813 A. 2d 726, 738 (2002) [A] claim raising

trial counsel ineffectiveness will no longer be considered waived because new counsel on direct

appeal did not raise a claim related to prior counsel's ineffectiveness") cited *Massaro* at 1695-

1696.

**A.    Juvenile counsel failed to object to the use of statements made at court ordered**

**psychiatrist examinations and defective transfer findings to support waiver of Juvenile**

**Jurisdiction.**

Before the petitioner received his part "A" and part "B" transfer hearings pursuant to M.G.L.

C. 119, Sec 61 to determine if petitioner is suitable for placement in the present Juvenile Justice

system.  The court ordered the petitioner to be examined by four psychiatrist.  Petitioner

complied with the courts order and was examined by the four psychiatrist.

Petitioners examination was conducted pursuant to M.G.L.C. 233 Sec. 20  (B) (attached)

which requires the psychiatrist to give a Lamb warning before the examination begins.  The

Lamb warning, *Commonwealth v. Lamb*  365 Mass 265,270 (1974) affords the patient/petitioner

the right to remain silent because the conversation will not be confidential and could be used

against the petitioner at his part "B" transfer hearing.

Neither of the four psychiatrist applied the required *Lamb* warning to the petitioner at any

time during the examinations.  After all of the examinations were completed, attorney for the

petitioner, then a juvenile, did not initiate nor attempt to introduce any psychiatric evidence on

petitioners behalf at part "B" transfer hearing.

To support the basis for transfer of juvenile jurisdiction the Juvenile court used statements and other information from the psychiatric examinations against petitioner. See (R. 18-19 Appx) and (R. 1-12 Appx). The use of these statements requires reversal. See *Estelle v. Smith* 101 S. CT. 1866, 1872, 1874-75 (1981). *In Re Gault*, 87.S.Ct. 1428 (1967), **Commonwealth v. Lamb**, 365  Mass, 265, 270 (1974)

The petitioner never received any psychiatric evaluation prior to the orders of this case nor did the petitioner have any prior dealings with the criminal justice system before these evaluations, no probation, etc...

Therefore, any and all information regarding petitioners psychological, psychiatric, and family history was obtained from the court ordered examinations with the psychiatrists.

Counsel never informed the petitioner that the examination could be refused by petitioner to protect himself and his Constitutional rights against self-incrimination nor did counsel object to the use of the information by the court which denied petitioner effective assistance of counsel. See *Strickland v. Washington* 104 S. Ct. 2052 (1984) and *Commonwealth v. Satterfield* 373 Mass 109, 115, (1977).

*In the matter of Laura L.* 54 Mass App. Ct. 853, 768 N.E. 2d 605 (2002) the court concluded that the failure of the Judge to make an inquiry of a knowing and voluntary waiver of *Lamb* issue created a substantial risk of a miscarriage of justice.

In the instant case Attorney Pino, the Juvenile Court, nor the Commonwealth protected the rights of the petitioner who was a 15 year old child with no prior experience with the criminal justice system.

The protection of children's rights with the court, attorney, and the commonwealth should be held to the highest of standards and pursued zealously to insure that due process and fundamental fairness is the normal practice. See *Kent v. US* 86. S. Ct 1045, 383 US 541 at 554-55 (1966).

The failure of the Juvenile Court Judge to inquire as to a knowing and voluntary waiver of the *Lamb* issue with petitioner requires reversal. See *Estelle  v. Smith* 101. S. Ct. 1866 (1981) and *in the matter of Laura L.* 54 Mass. App. Ct. 853, 857 (2002)

MGL. C. 119 Sec. 61 requires the Judge to decide whether a juvenile "presents a danger to the public and whether a child is amenable to rehabilitation" with subsidiary findings to support decision determining waiver of juvenile jurisdiction, (emphasis added).

In the instant case, the Judge concluded in his findings that the petitioner "is a great danger to the public and that he is not amenable to treatment in the Juvenile Justice System", see (R. 18-19 Appx.). the distinction between treatment and rehabilitation has been made clear and by the Judge not considering rehabilitation he shifted the burden under the statue which is an erroneous standard that he applied to decide waiver and this error requires reversal. See *Kent v. U.S.* 86 S. Ct. 1045, 383 US 541, at 552-53 (1966) and *Commonwealth v. O'Brien* 673 NE 2d. 552, 423 Mass 841 at 846-47 (1996).

It is fundamental that [W] here the language of a statue is plain. There is no room for speculation as to it's meaning. See *Massachusetts Bay Trans. Auth. V. Massachusetts Bay Trans. Auth. Retirement Bd.* 397 Mass 734, 738 (1986).

Also, the Judge did not consider relevant factors as required by MGL. C. 119 Sec. 61 to support waiver of jurisdiction specifically, no prior rehabilitation attempts and the likelihood of rehabilitation, nor did the Judge make a finding that the petitioner cannot be rehabilitated within the present juvenile justice system which is mandated.

The failure to address these factors as prescribed in MGL C. 119 Sec. 61, rule 85A of the rules of the District Court denied the petitioner due process and fundamental fairness.  See, _Kent v. U. S._ 86 S. Ct. 1045, 383 US 541 (1966) and _A Juvenile v. Commonwealth_ 347 NE 2d 677, 370  Mass 272 at 280 (1976) which requires reversal.

Attorney Pino had a duty to bring to bear such skill and knowledge and a duty of loyalty to petitioners defense and the failure to object to the defective findings, erroneous standard applied, and the violation of petitioners Constitutional right against self-incrimination as stated above, fell way below an objective standard of reasonableness which is the first prong in _Strickland v. Washington_ 104 S. Ct. 2052, 2064 (1984).

Had Attorney Pino objected at petitioners part "B" transfer hearing to the errors and violations demonstrated above the Judge would have had to revise his findings that applied an erroneous standard and excluded all psychiatric examination reports due to violation of right against self-incrimination which would have left the Judge with virtually no probative evidence to support a transfer of jurisdiction and the Judge would have committed petitioner to the Department of Youth Service until the petitioner reached the age of majority.

Counsels unprofessional error meet the second prong in _Strickland v. Washington_ 104, S. Ct. 2052 (1984) and _Commonwealth v. Satterfield_ 373 Mass 109, 115 (1977).

**B.**    **Trial counsel failed to file a motion to dismiss the indictment on grounds that the waiver of juvenile jurisdiction was defective.**

On or about March 31, 1978, Juvenile Court Judge Poitrast waived juvenile jurisdiction and transferred petitioner's case to the Superior Court.

On May 4, 1978 petitioner, at the age of 15 years old, was indicted for first degree murder and assault with intent to rob while being armed by a Suffolk County Grand Jury.

On May 8, 1978 , petitioner was arraigned in Suffolk Superior court and pled not guilty to the charges.

Attorney for the petitioner was Juvenile Court Attorney John Pino, and on May 22, 1978 Attorney Pino filed twelve motions requesting discovery and again on August 25, 1978 counsel filed a motion for severance. See (R. III Appx).

M.G.L.C. 277 Sec. 47-A states in a criminal case any defense or objection based upon defects in the institution of the prosecution or in the complaint or indictment including a failure to show jurisdiction in the court or to charge an offense may be raised by motion under MGL 277 Sec. 47A (attached).

The very first motion that Attorney Pino should have filed was the motion to dismiss the indictment under MGL. C. 277 Sec. 47A to prove that the transfer of jurisdiction was defective. See _Kent v. U.S._ 86 s. Ct. 1045, 383 U.S. 541, 552, (1966) and A _Juvenile v. Commonwealth_, 405 N.E. 2d 143, 380 Mass 552, 554 (1980).

Under obligation by motion  MGL. C. 277 Sec 47 the Trial Court Judge would have reviewed the opinion and order of the waiver of juvenile court jurisdiction on the merits of the claims and that would have accomplished something material for the petitioner.

Reviewing the transfer order would have resulted in either the indictment being dismissed or the case being remanded back to the Juvenile court for revised findings due to the erroneous standard applied to the waiver and excluding all statements and information that was obtained from petitioner during psychiatric examinations that violated petitioners constitutional rights against self-incrimination.

The Juvenile Court Judge violated petitioners United Stated constitutional 5th. Amendment and MGLA Constitution Pt. 1 Art. 12  Massachusetts Declaration of Rights against self-incrimination.

Per order of the court, petitioner was examined by four psychiatrist.  The examinations were conducted absent the required *Lamb* warnings, in violation of petitioners rights under the 5th. Amendment to the United States Constitution and Article 12 of the Massachusetts Declaration of rights, in that all...  The petitioner then a 15 year old child was not granted the protections of MGL. C. 233, Sec. 20 (B) and *Commonwealth v. Lamb* 365 Mass 265, 270  (1974) (attached).

The Juvenile Court Judge used information and statements that petitioner made to the four psychiatrist to support his decision to transfer jurisdiction.  See (R. 18-19 Appx) and R. 1-12 Appx).

The use of the statements and information from the examinations require reversal.  See *Estellee v. Smith* 101 Ss. Ct. (866, 1872, 74, 75 (1981) *In Re Gault*  87 S. Ct. 1428 (1967) *Commonwealth v. Lamb* 365 Mass 265, 270, (1974).

The Court also failed to inquire whether the petitioner then 15 years old knowingly and voluntarily waived his right against self-incrimination, which created a substantial risk of miscarriage of justice.  See *In the matter of Laura L.* 54  Mass App. Ct. 853, 854 (2002).

Counsel at the part ""B" transfer hearing did not initiate or attempt to introduce psychiatric evidence on the petitioners behalf.  In proceedings to transfer juveniles charged with murder in first or second degree, privileges against self-incrimination protected by  Federal and State Constitutions, foreclose compelled psychiatric examinations where juvenile does not seek to introduce his own psychiatric evidence in part "B" transfer hearing 5[th]. Amend. U.S. Const.

MGLA Const. Pt. 1 Art. 12 Massachusetts Declaration of Rights.  See *Estelle v. Smith* 101, S. Ct. 1866, 1872 (1981) *Commonwealth v. Wayne W.* 414  Mass 218, 228, 229 (1993).

MGL. C. 119 Sec. 61 requires the Judge to decide whether a juvenile "presents a danger to the public and whether a child is amenable to rehabilitation" (with subsidiary findings to support decision) to determine waiver of juvenile jurisdiction.  (Emphasis added).

In the instant case the Judge shifted the burden of the statue MGL. C. 119 Sec. 61 by concluding that petitioner "is a great danger to the public and that he is not amenable to treatment in the Juvenile Justice System.  See (R. 18-19 Appx)

*A Juvenile v. Commonwealth Supra* at 282, 347 NE 2d 677 (1976) "There must...be a finding that the juvenile cannot be rehabilitated within the present structure.

By the Judge not considering rehabilitation and any prior rehabilitation attempts are vital factors to consider in determining transfer.  MGL. C. 119 Sec 61 Amend. St. 1977 C. 829 Sec. 11, the courts findings are insufficient to meet the standards announced in *A Juvenile v. Commonwealth* 347 NE 2d, 677 (1976) *Kent v. U.S.* 86 s. Ct. 1045, 383 U.S. 541 (1966). Treatment is not the same as rehabilitation and MGL. C. 119 Sec. 61 Amend. St. 1977 C. 829 Sec. 11 requires the Judge to consider rehabilitation to support decision to waive jurisdiction. See *Commonwealth v. O'Brien* 673 NE 2d 552, 423 Mass 841, 846, 847 (1996).

It is fundamental [w]here the language of a statue is plain there is no room for speculation as to it's meaning.  See *Massachusetts Bay Trans. Auth. V. Massachusetts Bay Trans. Auth. Retirement Bd.* 397, Mass 734, 738, 493 NE 2d 848 (1986).

Counsels failure to file a motion to dismiss the indictment for the above mentioned violations in waiving juvenile jurisdiction fell way below an objective standard of reasonableness

which meet the first prong in *Strickland v. Washington* 104. S. Ct. 2052 (1984) and

*Commonwealth v. Satterfield*, 373 Mass 109, 115 (1977).

Petitioner was only 15 years old with no experience of the law and any prior dealings with the criminal justice system and attorney Pino had a duty to assist the petitioner and also owed the petitioner a duty of loyalty. See *Strickland v. Washington* 104 s. Ct. 2052, 2065 (1984). Due to the breakdown of communication with Attorney Pino the petitioners parents sought other representation and on September 11, 11978 Attorney Pino left the case. See (R. IV appx.). Had Attorney Pino filed a motion to dismiss the indictment under MGL. C. 277 Sec 47A the petitioner would have prevailed on the merits and the indictment would have been dismissed or the case would have been remanded back to Juvenile court with directions to revise the findings and exclude all psychiatric statements in an attempt to meet the standard for transfer announced in *A Juvenile v. Commonwealth Supra.* 347, NE 2d 677 (1976). *Kent v. U.S.* 86. S. Ct. 1045, 383 US 541 (1966). Attorney Pino's error meet the second prong in *Strickland v. Washington* 104 S. Ct 2052 (1984) which denied petitioner effective assistance of counsel in violation of United States Constitution Sixth Amendment, Article 12 of Massachusetts Declaration of Rights, *Commonwealth v. Satterfield* 373 Mass. 109, 115 (1977).

**C.      Second trial counsel failed to file motion to dismiss the indictment on grounds that the waiver of Juvenile Jurisdiction was defective MGL. C. 277 Sec 47A.**

On September 11, 1978, first trial Attorney John Pino withdrew from the case due to breakdown in communication with petitioner and Attorney Reuben Dawkins entered on the record that same date as attorney for petitioner. Attorney Dawkins was aware that the Department of Youth Service was still involved with petitioner and maintaining the position of advocating for petitioner through Case Worker, Marshall Stanton, and Regional Director,

Donald Brown to have petitioner transferred back to juvenile jurisdiction.  MGL. C. 277 Sec.

47A states in a criminal case, any defense or objection based upon defects in the institution of the

prosecution or in the complaint or indictment, including a failure to show jurisdiction in the court

or to charge an offense may be raised by motion under MGL. C. 277 Sec. 47A (attached).

Attorney Dawkins had a duty to bear skill and knowledge and was obligated to file a

motion to dismiss the indictment. See _Kent v. U.S._ 86 S. Ct. 1045, 383 U.S. 541, at 552 (1966)

and _A Juvenile v. Commonwealth_, 405 NE 2d 143, 380 Mass 552 at 554 (1980).

Unbeknownst to petitioner, at the time Attorney Dawkins was retained in this case,

Attorney was under intense pressure from the Massachusetts Board of Bar Overseers.  F.N. 1.

Attorney Dawkins displayed ineffective investigative work during pretrial stages by not

addressing the waiver of transfer and any potential defense for petitioner.

Attorney Dawkins agreed on September 27, 1978 to a trial date of October 3, 1978,

twenty-two days after entering the case.  See (R. IV Appx).

During trial petitioner refused an offer from the Commonwealth to plead guilty to second

degree murder.  See, _Commonwealth v. Smith_, 427 NE 2d 739, 384 Mass, 519, 520 (1981).

However, while the jury was in deliberation, questions were sent to the Judge from the Jury

regarding felony murder and how can they convict between first and second degree murder. ID at

520, 521, N. 3.

Petitioner then 15 years old without any prior experience in the criminal justice system,

and scared, was easily coerced by attorney into pleading guilty to second degree murder.

F.N.1 Attorney Dawkins was being investigated by the Mass Board of Bar Overseers for failing

to adequately prepare seven criminal cases.

Attorney was representing petitioner on charges of murder and assault with intent to rob while armed and did not do any pre-trial investigative work nor file the motion to dismiss the indictment and started trial twenty days after entering the case definitely fell way below an objective standard of reasonableness which is the first prong in *Strickland v. Washington* 104 S. Ct. 2052 (1984) and *Commonwealth v. Satterfield* 373 Mass 109, 115 (1977).

Had Attorney Dawkins applied some pre-trial investigative work and filed a motion to dismiss the indictment under MGL. C. 277 Sec. 47A for defective waiver of juvenile jurisdiction, that would have accomplished something material for the petitioner. See *Commonwealth v. Satterfield* 373 Mass 109, 115 (1977).

Had counsel filed the motion to dismiss the indictment under MGL C. 277 Sec 47A the trial court judge, under obligation, would have reviewed the opinion and order from the Juvenile Court Judge (along with the rest of the evidence from the part "B" transfer hearing) that waived jurisdiction.

The trial court judge would have reviewed that the juvenile court judge applied an erroneous standard to support the waiver in direct violation of MGL. C. 119 Sec. 611 along with defective findings and not considering mandatory factors specifically likelihood of rehabilitation, and that petitioner cannot be rehabilitated within present structure plus violating petitioners US Constitutional Fifth Amendment Right against self-incrimination in violation of MGL. C. 233 Sec. 20 (B).

The trial court Judge had the option to dismiss the indictment or remand the case back to Juvenile Court with instructions. See *Kent v. U. S.* 86 S. Ct. 1045, 383 U.S. 541 (1966) and *A Juvenile v. Commonwealth* 405 , NE 2d 143, 380 Mass 552 at 558-59 (1980).

Attorney Dawkins unprofessional errors meet the second prong in *Strickland v. Washington*, 104 S. Ct. 2052 (1984) and *Commonwealth v. Satterfield* 373 Mass 109, 115 (1977) which denied petitioner effective assistance of counsel in violation of US Constitution 6th. Amendment, Article 12 of Mass. Declaration of rights and requires reversal.

**D.    Appellate Counsel James E. Small Jr. failed to raise and argue claims of ineffective assistance of counsel and defective waiver or juvenile jurisdiction.**

Petitioner filed a motion for a new trial pursuant to Mass R. Crim. P. Rule 30 B. in 1995 and in October of 1996 unbeknownst to petitioner, Judge Spurlock denied the motion.

Petitioner did not learn about such denial until the summer of 1999 through Attorney Small. Attorney Small filed a motion to reconsider the denial and request to leave to supplement the original motion with the claim of the juvenile court judge applying an erroneous standard to support the waiver of jurisdiction, see (R. 57-69 Appx) in violation of MGL. C. 119 Sec. 61.

Attorney Small also filed a new motion for a new trial in October of 1999 with the claim of the prosecutor's unconstitutional use of peremptory jury challenges. In October of 1999 Judge Spurlock denied both motions, reconsideration, and motion for new trial without a hearing.

Attorney Small filed a notice of appeal for both denials and submitted a brief to the Appeals Court at a later date.

Petitioner requested that Attorney Small raise the claim of ineffective assistance of counsel on trial counsel Reuben Dawkins and appellate Counsel Rosemary Scapicchio on the motion for new trial filed in 1999 and Attorney Small neglected to do so which ultimately did not preserve petitioners claims.

Attorney Small also abandoned on appeal the issue of defective juvenile transfer that was raised in motion to reconsider in Superior Court in 1999, see *Commonwealth v. Hill* 50 Mass. App Ct. 1114, 751 NE 2dd 933, F.N.1

In 2001 petitioner filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. Rule 30 A. and raised claims of ineffective assistance of counsel, juvenile trial and appellate court, thus placing petitioner's claims reviewable according to *Massaro v. US* 123 S. Ct. 1690 (2003) and *Commonwealth v. Cowie* 404 Mass 119, 123, (1989).

Attorney Small failed to raise ineffective assistance of counsel claim against trial councel Reuben Dawkins for not filing a timely motion to dismiss the indictment for defective juvenile transfer waiver of jurisdiction. Attorney Small also neglected to raise the claim ineffective of assistance of counsel on appellate attorney Rosemary Scapicchio for not informing petitioner that motion for new trial was denied in October, 1996 by Superior Court Judge Spurlock.

Attorney Small was also ineffective for not filing application for further appellate review in the Supreme Judicial Court after petitioners appeal was denied on January 25, 2001 in the Massachusetts Appeals Court. Petitioner claims are properly raised for review by this court.

**Argument II**

**Trial Court, Massachusetts Appeal Court and Supreme Judicial Court committed error of law by not reviewing jurisdictional and miscarriage of justice claims.**

Petitioner filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. Rule 30 A in June of 2001 on the grounds of ineffective assistance of counsel, juvenile, trial and appellate plus defective transfer of juvenile jurisdiction, see (R. 88 Appx.)

Petitioner's motion was denied in Suffolk Superior Court by Judge Spurlock on December 11, 2001 and petitioner filed a notice of appeal.

23

Petitioner filed his brief in the Massachusetts Appeals Court addressing the claims brought forth in Superior Court and the appeals court affirmed the Superior Court's denial on July 30, 2003.

Petitioner filed a petition for rehearing in the Massachusetts Appeals Court on August 11, 2003 and the Appeals Court denied the petition on October 29, 2003, see (R. 90. Appx), (R. 91 Appx).

In February of 2004 petitioner filed an application seeking further appellate review with the Supreme Judicial Court and on March 31, 2004, without a hearing, the S.J.C. denied the application.

Petitioner raised claims of jurisdictional violations that created a substantial risk of a miscarriage of justice also deemed Constitutional dimension and was denied review by all three levels of State Court.

Massachusetts Appeals Court finally recognized and acknowledged that petitioner successfully raised, for the first time, the claim of defective juvenile transfer of jurisdiction according to MGL. C. 119 Sec. 61 as amended by St. 1977 C. 829.  See (R 89Appx.)

Juvenile waivers of jurisdiction are to be reviewed by Superior Court and Appeals Courts regardless of a guilty plea, and a guilty plea will not preclude a court from hearing a Constitutional claim that the state should not have tried the defendant at all.  See *Menna v. New York* 96. S. Ct. 241, 242 (1975).

Also, a guilty plea here does not amount to a waiver of the jurisdictional defects affecting the proceedings by which petitioner was convicted and sentenced.  See *Powell v. Hocker* 453 F 2d 652, 656 (9th Cir. 1971).

24

Massachusetts appeals court relied on *Commonwealth v. Fanelli,* 412 Mass. 497, 500

(1992) which deals with guilty pleas of non-jurisdictional issues and this error requires reversal.

All waivers of juvenile jurisdiction to Superior Court have to meet required standards of

due process and fairness and the order of waiver are reviewable in Superior Court to determine if

the waiver of jurisdiction was appropriate.  See *Kent v. US* 86 S. Ct. 1045, 383 U.S. 541 (1966).

If the waiver of jurisdiction was invalid then the Superior Court lacked the jurisdiction to try the

defendant.  See *Kent v. U.S.* 86 s. Ct. 1045, 383 U.S. 541 (1966) and *Menna v. New York* 96 S.

Ct. 241, 242, and *Commonwealth v Clark* 400 NE 2d 251, 379 Mass. 623, 626, (1980).

The denial of review by the Trial, Massachusetts Appeals Court, and the Supreme

Judicial Court requires reversal as demonstrated above.


### Conclusion

As reasons as set fourth above, the petitioner hereby, respectfully request that this

Honorable Court issue the Writ Of Habeas Corpus and remand the case back to Juvenile Court

for a hearing De Novo on waiver and if the court finds that waiver was inappropriate, petitioners

conviction must be vacated and released from custody.


Gerald M. Hill, Pro Se

*Gerald M. Hill (9th)*

S.B.C.C.          W36748

P.O. Box 8000

Shirley, Ma.  01464

9-17-04

25