UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS


GERALD M. HILL,                    )
            PETITIONER             )
                                   )
    V.                             )    C.A. NO. 04-10776-RCL
                                   )
EDWARD FICCO, SUPERINTENDENT       )
            RESPONDENT             )
                                   )


PETITIONER'S OPPOSITION TO
RESPONDENT'S MOTION TO DISMISS

PRIOR PROCEEDINGS

     In February of 1978, petitioner, Gerald M. Hill,
then fifteen years old, was charged with murder and
assault with intent to rob in Boston Juvenile Court.
In March of the same year (1978), the petioner's
juvenile jurisdiction was transfered by Juvenile Court
judge Poitrast, to the Superior Court; and in May of
1978 indicted by a Suffolk County Grand Jury on the
charges of first-degree murder and assault with intent
to rob.

     On October 3, 1978, petioner started trial in the
Suffolk Superior Court; and on October 17, 1978,
petitioner plead guilty to second degree murder.
Consequently, the petitioner was was sentenced to

second degree life in prison.

In June of 1984, petitioner files, pro se, his
first New Trial Motion, in which was ultimately amended
in March of 1985 challenging the transfer from Juvenile
Court to the Suffolk Superior Court. Subsequently, in
April of 1985, Superior Court Judge McGuire denied all
motion.   In 1986 the Massachusetts Appeals Court
affirmed the trial judge's ruling in an unpublished
decision, Commonwealth V. Hill, 21 Mass. App. Ct. 1109
(1986).

In October of 1991, the petitioner filed a petition
for a writ of habeas corpus, NO. 91-12721-WD, and due
to unexhausted claims dealing with the juvenile transfer,
the petition was dismissed without prejudice on March
17, 1992.

In April of 1992, petitioner retained attorney
Rosemary Scapicchio, to file a post-conviction appeal to
address the unexhausted claims dealing with the juvenile
transfer of jurisdiction, in which attorney Scapicchio
didn't file a motion for a new trial until May of ~~1996~~.
Due to a Board of Bar Overseers conflict between
petitioner and attorney Scapicchio, petitioner didn't
learn of the Superior Court October 1996 ruling for
three years.  Petitioner learned of the denial in
September of 1999, and new counsel, James E. Small, Jr.
for petitioner filed a Motion for Reconsideration, a
supporting affidavit from the petitioner and a Motion to

amend the second Motion for a New Trial filed in May of 1995 by former attorney Scapicchio; and a third Motion for a New Trial.  That same year, 1999, again Superior Court Judge Spurlock denied all motions.

In 2001, the Massachusetts Appeals Court affirmed the Superior Court judge's ruling in an unpublished opinion, Commonwealth V. Hill, 50 Mass. App. Ct. 1114 (2001).  Attorney James E. Small abandoned petitioner's case and didn't file the required application for further appellate review in the Supreme Judicial Court.

In June of 2001, petitioner files a fourth motion for post-conviction relief to protect and preserve his miscarriage of justice claims; and in December of 2001, Judge Spurlock denied the motion.  Petitioner filed a Motion for Reconsideration that was subsequently denied on July 30, 2003.  The petitioner's appeal was affirmed by the Massachusetts Appeals Court, Commonwealth V. Hill, 58 Mass. App. Ct. 1110 (2003).  On August 11, 2003, petitioner filed a petition for  a rehearing in the Masschusetts Appeals Court, and on October 29, 2003, the petition was denied.  Petitioner's application for further appellate review in the Supreme Judicial Court was denied on March 31, 2004.

### STATEMENT OF FACTS

On February 10, 1978, the victim, Max Fishman was shot and killed during an attempted robbery while

delivering oil in Roxbury.  Petitioner, then fifteen
years old and his co-defendant Hubert L. Smith then
twenty-one, were arrested and charged with murder and
assault with intent to rob.  Other unrelated charges
pending with petitioner in 1978 are not part of the
Statement of Facts to this particular case.  Because of
the severity of the alleged crime, the Boston Juvenile
Court was required by M.G.L. c. 119, § 61 to consider
transferring the case to the Superior Court, which
Boston Juvenile Court ultimately did transfer juvenile
juridiction.

## ARGUMENT

**I.     THE PETITIONER'S WRIT SHOULD NOT BE DISMISSED
DUE TO TIME BAR.**

Petitioner's writ for habeas corpus was filed after
the effective date of the Antiterrorism and effective
Death Penalty Act ("The AEDPA"), however, the petitioner
request that the  Court review this petition for
equitable tolling under extraordinary circumstances.
United States V. Marcello, 212 F.3d 1005, 1010 (7th Cir.),
121 S.Ct. 188 (2000); Davis V. Johnson, 158 F.3d 806,
810 (5th Cir. 1998), 119 S.Ct. 1474 (1999).  The party
who seeks to invoke equitable tolling bears the burden
of establishing the basis for it.  Carter V.
W. Publ'g Co., 225 F.3d 1258, 1265 (11th Cir. 2000);
I.V. Servs. of Am Inc. V. Inn Dev & Mgmt. Inc., 182
F.3d 51, 54 (1st Cir. 1999).

4

Here, petitioner retained counsel Rosemary
Scapicchio in April of 1992, approximately one month
after District Court Judge Woodlock dismissed
petitioner's writ for habeas corpus,  C.A. NO. 91-
1271-WD, due to unexhausted claims.  Attorney Scapicchio
was retained to file a post conviction appeal to address
the unlawful miscarriage of justice transfer of juvenile
jurisdiction to Superior Court that petitioner suffered.
Attorney Scapicchio was paid the fee requested, five
thousand dollars up front, and another twenty-five
hundred upon petitioner's release.  Attorney Scapicchio
was not retained to do any other work for the petitioner;
such as parole hearings.  Nor did she ever file a civil
action against former Gorvernor Weld.  Attorney
Scapicchio also lied about contacting co-defendant's
counsel in attempt to locate Juvenile Court transfer
hearing transcripts, due to the fact that the
petitioner's co-defendants were adults and didn't have
any dealings in the juvenile proceedings.  Also,
juvenile hearings were on tape and District Court Rules
state that the court was only mandated to preserve the
tapes for two and a half years before erasing.  Attorney
Scapicchio says she prepared an application for further
appellae review.  In June of 1993, seven years after the
Massachusetts Appeals Court affirmed the Superior Court's
ruling, Commonwealth V. Hill, 21 Mass. App. Ct. 1109
(1986), which is a lie, nor would the Supreme Judicial

Court accept the application and any competent respectable attorney knows this. Petitioner was told by attorney Scapicchio that the application for appellate review was allowed and the Commonwealth didn't want to address it and wanted to resolve the matter. Petitioner inquired regularly with Scapicchio about the so-called deal with the Commonwealth and Scapicchio kept mahing up all sorts of excuses; and this scam went on from September of 1993 to November of 1993, at the time unbeknowest to the petitioner that attorney Scapicchio didn't have petitioner's best interest at hand.

From November of 1993 to May of 1995, attorney Scapicchio did absolutely nothing to bring my case to court. Finally, after alot of arguing a motion for a New Trial was filed in May of 1995.

Petitioner and attorney Scapicchio continued to have conflict due to attorney Scapicchio not forwarding copies of the New Trial Motion, or the said application for further appellate review with the S.J.C. to petititioner. As time went on, petitioner grew impatient with attorney Scapicchio and realized that attorney Scapicchio wasn't representing the petitioner's best interest; and petitioner filed a complaint with the Board of Bar Overseers in February of 1996 breaking all ties with attorney. Attorney Scapicchio responded to petitioner's complaint in March and the court has a copy of the complaint and response attached to

petitioner's memorandum in support of petition for a
writ of habeas corpus.

Petitioner filed a motion for new counsel to
represent the petitioner on the pending motion on April
17, 1996, and on May 3, 1996, Judge Spurlock denied the
motion.   After receiving the denial for appointment of
counsel, petitioner called the clerks office and
inquired if the pettitioner would be called into court
to address the pending motion; and the clerk stated
that, unless the judge orders it, petitioner would not
be called in and the judge would rule on the motion and
when the decision comes to the clerk, the clerk would
notify petitioner with the ruling.   Judge Spurlock
denied the Motion for a New Trial on October 24, 1996,
and the ruling was forwarded to District Attorney, Ralph
Martin and attorney Scapicchio.

The Superior Court Judge Spurlock and the clerk of
courts knew that attorney Scapicchio was no longer
representing me on the Motion for a New Trial, but
still forwarded the ruling to counsel, and by doing so,
in conjunction with attorney Scapicchio failing to
notify petitioner, resulted in petitioner defaulting on
a timely appealing the ruling which constitutes
ineffective assistance of counsel.   As such, the default
is to be imputed to the state.   See, Murray V. Carrier,
106 S.Ct. 2639, 2645 (1986).

Here, the respondent relies on Pryor V. U.S. Postal

Service, 769 F.2d 281, 287 (5th Cir. 1985)(a party has
a duty of dilligence to inquire about the status of his
case), Plowden V. Romine, 78 F.supp.2d 115, 119
(E.D.N.Y. 1999), to demonstrate petitioner didn't
demonstrate reasonable diligence. Hence, if the person
seeking equitable tolling has not exercised reasonable
dilligence in attempting to file after the extraordinary
circumstances began, the link of causation between the
extraordinary circumstances and the failur to file is
broken, and the extraordinary circumstances therefore,
did not prevent timely filing. See, Baldayaque V.
United States, 338 F.3d 145, 150 (2003).

In this instant case, once petitioner became aware
of the October 24, 1996 denial of the Motion for a New
Trial, in September of 1999, petitioner's new attorney,
James Small, filed several motions seeking reconsideration,
affidavit from petitioner stating the fact that petitioner
was unaware of the ruling, amotion to amend the original
motion and ultimately, a third Motion for a New trial.
Petitioner's motions were denied and attorney Small
filed an appeal in the Massachusetts Appeals Court for
the second and third Motions for a New Trial, see,
Commonwealth V. Hill, 50 Mass. App. Ct. 1114 (2001), as
if petitioner received the October 24, 1996 ruling in
1996 in a timely fashion.

Petitioner's attorney Small abandoned the petitioner's
case and didn't file an application for further appellate

review in the Supreme Judicial Court, thus, the
petitioner was forced to file a fourth Rule 30 Motion
to be released from unlawful restraint for ineffective
assistance of counsel claims, and to preserve
petitioner's claims of defective juvenile transfer.
See, Commonwealth V. Cowie, 404 Mass. 119, 123 (1989).

In Plowden V. Romine, supra, like the petitioner,
Plowden asserts that he did not receive notice, either
from the Court of Appeals, or from his appellate consel
that his appeal had been denied until he wrote the Court.
However, unlike the petitioner's case, in Plowden, a
denial from the Appeals Court is reported in a publication
for the public and for prisoners, see Id at 119.  Also,
in Plowden, he had an appellate attorney to check the
status of the case to maintain within procedural
grounds, and therefore, Plowden, is inapposite.

Pryor V. U.S. Postal Service, supra is also
inapposite.  In that case Pryor didn't demonstrate any
extraordinary circumstances that impeded him from from
diligently pursuing the status of his case during and
after the statutory period. See, Baldwin County Welcome
Center V. Brown, 446 U.S. 147, 151 (1984).

In this instant case at hand, petitioner sought out
the status of his case and future events with the
clerk's office.  The clerk and Judge Spurlock were aware
that the petitioner was now a pro se litigant due to the
denial of petitioner's Motion for Appointment of New

Counsel.  The fact that the clerk told petitioner when
a ruling is made the petitioner will be notified,
coupled with the fact that the ruling was sent to
attorney Scapicchio, who was no longer petitioner's
attorney due to the severe conflict of interest
concerning the Board of Bar Overseers complaint, thus,
both the Court and attorney Scapicchio effectively
impeded the petitioner from filing a timely appeal in
the Massachusetts Appeals Court. See, United States V.
Patterson, 211 F.3d 927, 930-931 (5th Cir. 2000). Hence,
the trial court's gross incompetence along with
attorney Rosemary Scapicchio's misconduct is sufficiently
egregious to justify tolling.  See, Spitsyn V. Moore,
345 F.3d 796, 798-801 (2003), and Baldayaque V.
United States, 338 F.3d at 148-149.

   In Baldayaque, the attorney was paid a fee of five
thousand dollars to file a "2255" Motion in petitioner's
behalf, but abandoned that timely request, lied to the
petitioner, his family members and filed a Motion for
Modification of petitioner's sentence to permit him to
be deported immediately.  Id. at 143-149.

   In Spitsyn, the attorney was paid a fee of two
thousand dollars to file a petition for a writ of habeas
corpus and didn't file the petition at all.  Thus,
placing petitioner's one year deadline in default.  Id.
at 798-799.

   In the case at bar, petitioner suffered the same

misconduct from attorney Scapicchio; and by attorney
Scapicchio refusing to do what was requested by
petitioner on such a fundamental matter, attorney
Scapicchio violated a basic duty of an attorney to her
client.  See, In Re Agent Orange Prod. Liab. Litig.,
800 F,2d 14, 17 (2d Cir. 1986)("As a matter of
professional responsibility, an attorney owes a duty of
loyalty to his client.  This duty encompasses an
obligation to defer to client's wishes on major
litigation decisions").

Lastly, failure to consider the federal claim will
result in a fundamental miscarriage of justice.  See,
Murray V. Carrier, 477 U.S. at 485.  Also see, Burks V.
DuBois, 55 F.3d 712, 716 (1st Cir. 1995).  Hence,
petitioner request that the respondents Motion to
Dismiss be denied and judgement entered that equitable
tolling under extraordinary circumstances be allowed,
from the date of March 31, 2004 when petitioner's
further appellate review in the Supreme Judicial Court
was denied and, or whenever the Court deems necessary
to meet the statute ("AEPDA") 2244 (d)(1)(a).

## II.    PETITIONER'S GROUNDS ONE THROUGH FOUR ARE PROPERLY BEFORE THE COURT FOR REVIEW.

The respondent argues that the petitioner's
grounds one through four are procedurally defaulted
based on the 2003 Massachusetts Appeals Court ruling.
See, Commonwealth V. Hill, 58 Mass. App. Ct. 1110.

According to Massaro V. United States, 123 S.Ct.
1690 (2003), the Supreme Court ruled "that a failure to
rais an ineffective assistance of counsel claim on direct
appeal does not bar the claim from being brought in a
later, appropriate proceeding." Id at 1696.  "A claim
raising trial counsel ineffectiveness will no longer be
considered waived because new counsel on direct appeal
did not raise a claim related to prior counsel's
ineffectiveness"  Id. at 1695 and Commonwealth V. Grant,
813 A.2d 726, 738 (2002).

Here, petitioner raised the claim of ineffectiveness
on the first Motion for a New Trial in 1984 against
attorney Dawkins and challenged the juvenile transfer.
The trial court denied the motion and the Massachusetts
Appeals Court affirmed the ruling.  Petitioner then
requested that attorney Rosemary Scapicchio raise
ineffectiveness on petitioner's second Motion for a New
Trial, and the same request was made upon attorney James
Small on petitioner's third Motion for a New Trial.
Petitioner filed a fourth post-conviction appeal, pro se,
and raised ineffective assistance of counsel claims to
preserve and accord claims reviewable.  See, Massaro
V. United States, supra and Commonwealth V. Cowie, 404
Mass. at 123 (1989).

Massachusetts Appeals Court ruling in Commonwealth
V. Hill, 58 Mass. App. Ct. 1110 (2003) is clearly in
violation of 28 U.S.C. 2254 (d)(1).

Petitiner raised miscarriage of justice claims in this fourth post-conviction from the proceedings in petitioner's juvenile transfer hearing and decision to waive jurisdiction, whereas, petitioner's Fifth Amendment, federal and state Constitutional privilege against self-incrimination were violated.  Specifically, the petitioner was arrested and charged for murder and assault with intent to rob on February 11, 1978. Petitioner then fifteen years old, Boston Juvenile Court Judge Poitrast, ordered petitioner to be evaluated by the court clinic on February 13, 1978.  Petitioner was evaluated by four different psychiatrist and before, during and after any of these evaluations was the petitioner advised of his right to remain silent, or given the required lamb warning.  See, M.G.L. c. 233, § 20B; Commonwealth V. Lamb, 365 Mass. 265, 266-270 (1974); In Re Gault, 87 S.Ct. 1428, 1454-1455 (1967); Estelle V. Smith, 101 S.Ct. 1866, 1872-1873 (1981); Dept. of Youth Service V. A Juvenile, 398 Mass. 516, 524-526 (1986).  All of the above cases cited have been deemed miscarriage of justice, federal and state.

In proceedings to transfer juveniles charged with murder in first, or second degree, privileges against self-incrimination, protected by federal and state constitution, foreclose compelled psychiatric examination where juvenile does not seek to introduce his own psychiattic evidence in second portion of

13

proceedings (transfer hearing), U.S.C.A. Const.
Amendment 5; M.G.L.A. Const., Pt.1, Art. 12.  See,
Commonwealth V. Wayne, 414 Mass. 218 (1993).

In the case at hand, petitioner's juvenile attorney
John Pino, never, nor attempted to introduce any
psychiatric evidence at petitioner's transfer hearing.
Attorney Pino had a duty of loyalty to the petitioner
to protect his rights.  Attorney Pino did not warn the
petitioner that the petitioner had the right to refuse the
evaluations and, or remain silent, nor did attorney John
Pino inform the petitioner that the petitioner was
allowed to terminate the examination when he wished.
See, Estelle V. Smith, 101 S.Ct. at 1872.

Judge Poitrast used information obtained from these
psychiatric evaluations to waive petitioner's juvenile
jurisdiction to Superior Court (See, R.18-19, Appx
Pet. Memo.) clear violation of, In Re Gault, 87 S.Ct.
1428, 1454-1455 (1967); Estelle V. Smith, supra

All court orders and examinations are placed under
the ambit of M.G.L. c. 233, § 20B, self-incrimination
privilege; and by Judge Poitrast not making any inquiry
or findings on the Lamb issue with the psychiatric
evaluations was error amounting to a substantial risk
of a miscarriage of justice.  See, In The Matter Of
Laura L., 54 Mass. App. Ct. 853, 854 (2002). Petitioner
never had any prior probation, DSS issues, or experience
with the judicial system for this information to be

14

provided to Judge Poitrast other than the compelled
psychiatric evaluations  that the judge ordered on
February 13, 1978, violating petitioner's Fifth and
Sixth Amendmet rights the U.S. Constitution.  See,
Powell V. Texas, 109 S.Ct. 3146 (1989).  Ultimately,
petitioner was transfered to Superior Court to be tried
as an adult in violation of his due process claims.
See, Kent V. United States=, 86 S.Ct. 1045 (1966);
A Juvenile V. Commonwealth , 380 Mass. 552, 553 (1980);
Juvenile V. Commonwealth, 370 Mass. 272, 281 (1976).

An invalid transfer of juvenile juridiction to
Superior Court for trial as an adult cannot be said to
be harmless error.  Kent V. United States, 383 U.S.
541, 564 (1966).  Under Massachusetts statutes in 1978,
a juvenile complaint must be dismissed befor adult
proceedings may be initiated against a juvenile.  See,
M.G.L. c. 119, § 61, 74.  Where a dismissal is invalid,
the criminal court lacks jurisdiction to accept a
guilty plea.  Commonwealth V. Clark, 379 Mass. 623,
626 (1980) and Cf. Rachel V. Commonwealth, 369 Mass.
956 (1975).  Also see, Powell V. Hocker, 453 F.2d 652,
656 (9th Cir, 1971); Kent V. United States, supra; and
Harris V. Procunier, 498 F.2d 576 (1974).

A competent attorney could most likely have
discovered the error shortly after the order was issued
when he received a copy or when he examined the
proceedings,  For regularity before counseling his

client to plead guilty, or stand trial in Superior Court.
See, Crick V. Smith, 650 F.2d 860, 865-866 (1981).
Petitioner's juvenile and first Superior Court attorney
John Pino should have been aware of the Kent case, and
In Re Gault, and by thr attorney not enforcing the
ruling of those cases deems attorney ineffective.
Crick V. Smith, 650 F.2d at 865; Strickland V.
Washington, 104 S.Ct. 2052 (1984).

Here, both trial attornies for the petitioner, John
Pino, and Rueben Dawkins were ineffective due to the
fact that both attornies should have known to file a
timely Motion to Dismiss the indictment due to the
invalid waiver of jurisdiction and by not filing said
motion. M.G.L. c. 277, § 47A. If said motion had been
filed in the Superior Court, the judge would have
addressed these Due Process and miscarriage of justice
violations and had the option of dismissing the
indictment, or remanding the case back to Juvenile
Court with specific instructions on how to deal with the
violations of petitioner's Due Process claims.  See,
Kent V. United States, 86 S.Ct. 1045 (1966);
A Juvenile V. Commonwealth, 380 Mass. 352 (1980).

Petitioner was tried as an adult in October of
1978 and plead guilty to second degree life at the age
of fifteen years old.

Attorney John Pino and attorney Rueben Dawkins
showed serious incompetence, inefficiency and behavior

falling measurably below that which might be expected from an ordinary fallible lawyer. Commonwealth V. Satterfield, 373 Mass. 109, 115 (1977); Strickland V. Washington, 104 S.Ct. 2052 (1984).

Post conviction attorney Rosemary Scapicchio's misconduct was sufficiently egregious to the point, where petitioner filed a complaint with the Board of Bar Overseers against counsel; and counsel out right withheld Superior Court Judge Spurlock's ruling from petitioner when attorney was no longer representing petitioner, thus, placing petitioner's appeal rights in jeopardy.

Second post conviction attorney James E. Small omitted ineffectiveness claims as did counsel Scapicchio in the second Motion for a New Trial she filed. Attorney Small also abandoned petitioner's juvenile Due Process claims on appeal. See, Commonwealth V. Hill, 50 Mass. App. Ct. 1114, n. 1 (2001). Attorney Small also abandoned petitioner's case and didn't file an application for further appellate review with the Supreme Judicial Court, which led to petitioner filing his fourth post-conviction relief, pro se.

The Court cannot expect a fifteen year old boy with no prior experience in the judicial system to comprehend the legal court process; and by private and court appointed attorneys, the petitioner never received proper legal representation to protect the rights that

have been vividly violated, nor correct these egregious errors. Petitioner was denied relief in the S.J.C on an unrelated case in 1982. See, Commonwealth V. Hill, 387 Mass. 619, 620-623 (at 621 n. 3). In that ruling the Court declined to address petitioner's claim that the juvenile judge didn't write the required letter of written findings mandated in M.G.L. c. 119, § 61, ⓘ, to demonstrate transfer of jurisdiction, because the juvenile court judge did infact write the required findings and the Commonwealth submitted the findings in their brief. Therefore, petitioner's request to dimiss the indictment was denied. In 1984 the petitioner attempted to challenge the transfer, but trial and Mass. Appeals Court refuse to address the issue, ruling that the petitioner's claim has been dealt with in 1982 in an unrelated case. Commonwealth V. Hill, 387 Mass. 619 (1982).

Petitioner's second post conviction appeal was denied in Superior Court for failure to file a timely motion to dismiss the indictment (M.G.L. c. 277, § 47A) due to the invalid transfer of jursdictio; and the Massachusetts Appeals Court affirmed the trial court's ruling, and also ruled that petitioner's claim has been dealt with in 1982. Commonwealth V. Hill, supra. Also see, Commonwealth V. Hill, 50 Mass. App. Ct. 1114 (2001).

Petitioner's second post conviction attorney, James Small, sought to amend petitioner's second Motion for a

New Trial claiming defective juvenile findings and the reconsideration was denied by Superior Court Judge Spurlock; and on appeal with the Massachusetts Appeals Court, attorney Small abandoned the issue of defective findings. See, Commonwealth V. Hill, 50 Mass. App. Ct. 1114, n.1 (2001).

Petitioner on his fourth post-conviction, pro se, placed the Due Process and miscarriage of justice claims before the courts, defective findings and violation of Fifth Amendment against self-incrimination, and successfully proved that the transfer issue has never been decided or adjudicated and the rulings in petitioner's previous post-convictions were erroneous. Because in 1982, the petitioner was led to believe that the Juvenile Court judge made no written findings and argued that matter to the court. Once realized, that findings were made in both of petitioner's cases, petitioner has been diligently pursuing his right to appeal the Due Process and miscarriage of justice violations in the defective findings from the Juvenile Court. See, Kent V. United States, 86 S.Ct. 1045 (1966); Powell V. Hocker, 453 F.2d 652 (1971); A Juvenile V. Commonwealth, 380 Mass. 552 (1980).

Moreover, even if the petitioner was seeking to present his previous claims; waiver does not apply if the same ground was presented, but not adjudicated on the merits. Sanders V. United States, 373 U.S. 1, 17 (963).

The Massachusetts Appeals Court ruling in,
Commonwealth V. Hill, 58 Mass. App. Ct. 1110 (2003) was
a clear violation of  28 U.S.C., § 2254 (d)(1).  The
Court ruled that by the petitioner pleading guilty to
murder, the petitioner waived any claims based on events
that proceeded the plea.  Commonwealth V. Fanelli, 412
Mass. 487, 500 (1992). This ruling is misplaced.  This
is true whereby the Fanelli Court decided that,
"non-jurisdictional defects in the proceedings prior to
the entry of the guilty plea" are waived.  Id. at 500.
The claim of defective juvenile transfer is one of
Constitutional dimension and "jurisdictional" in nature.
See, Kent V. United States, 86 S.Ct. 1045 (1966).  Also
see, Powell V. Hocker, 453 F.2d at 656.

In Powell, the 9th Circuit ruled that a guilty plea
entered in adult court did not waive defect in transfer
certification proceedings.  Id at 656.  When a defendant
voluntarily and knowing pleads guilty at his trial this
constitutes a waiver of all "non-jurisdictional"
defenses.  Thomas V. United States, 290 F.2d 696, 697
(9th Cir. 1961).

"[A] juvenile complaint must be dimissed before
adult criminal proceedings may be initiated against a
juvenile . . . where a dismissal is invalid.  The
criminal court lacks jurisdiction to accept a guilty
plea . . . "

Here, because the petitioner's Due Process claims

attack the validity of the dismissal of the juvenile complaint, they are jurisdictional in nature. Consequently, the petitioner's guilty plea does not preclude consideration . Commonwealth V. Clark, 379 Mass. 623, 626 (1980) and cases cited.

The Massachusetts Appeals Court ruling on the Fanelli, is contrary to clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C., § 2254 (d)(1).

Massachusetts Appeals Court ruled that petitioner may not circumvent that principle by claiming his plea was the result of ineffective assistance of counsel, as he did not raise that issue in any of his previous motions for a new trial. Commonwealth LeFave, 430 Mass. 169, 173 (1999). The Supreme Couert of the United States decided in Massaro V. United States, 123 S.Ct. 1690 (2000), that failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later appropriate proceeding, which is clearly established federal law by the United States Supreme Court and contray to the Massachusetts Appeals Court ruling in this case.

Lastly, Massachusetts Appeals Court decided that petitioner's case was not extraordinary where upon sober reflection, it appears that a miscarriage of justice might result. Commonwealth V. Curtis, 417 Mass. 619, 626 (1994) quoting from Commonwealth V. Harrington,

379 Mass. 446, 449 (1980).

Petitioner raised a claim of Fifth Amendment self-incrimination violation, which resulted in petitioner suffering from such violation that's been deemed a miscarriage of justice in the Supreme Court of the United States. See, In Re Gault, 87 S.Ct. 1428, 1454-1455 (1967); Estelle V. Smith, 101 S.Ct. 1866, 1872-1873 (1981); Powell V. Texas, 109 S.Ct. 3146, 3147-3148 (1989); Satterwhite V. Texas, 108 S.Ct. 1792 (1988).

The Massachusetts Appeals Court ruling is clearly contrary to established federal law determined by the Supreme Court of the United States. Also, Massachusetts has a "long standing rule that an alleged error of Constitutional dimension, if concluded to be, shall not go uncorrected. See, Commonwealth V. Harrington, 379 Mass. 446, 450 (1980); Commonwealth V. Freeman, 352 Mass. 556, 563 (1967). Massachusetts has deemed, a violation of Fifth Amendment right against self-incrimination a miscarriage of justice in Commonwealth V. Lamb, 365 Mass. 265 (1974); In The Matter Of Laura L., 54 Mass. App. Ct. 853 (2002); Dept. Of Youth Service V. A Juvenile, 398 Mass. 516, 524-525 (1986).

According to Wainwright V. Sykes, 97 S.Ct. 2497 (1977), the petitioner sufficiently demonstrated the "cause" and "prejudice" exception. Id. at 2508-2509.

Petitioner also demonstrated a clear miscarrige of justice and the failure to consider the federal claim will result in a "fundamental miscarrigae of justice." Murray V. Carrier, 477 U.S. 478, 485 (1986); Burks V. DuBois, 55 F.3d 712, 716 (1st Cir. 1995). Petitioner was deprived of fundamental fairness and Due Process by the invalid transfer of juvenile jurisdiction. See, Kent V. United States, 86 S.Ct. 1045 (1966) and not being heard on the claim of Constitutional dimension. Commonwealth V. Harrington, 399 Mass. at 450.

In Kent, the Court stated: "[I]t is implicit in (the Juvenile Court) scheme that non-criminal is to be the rule - and the adult criminal treatment, the exception which must be governed by the particular factors of indivudual cases. Id. at 560-561.

The Miscarriage of justice errors committed in the transfer juvenile jurisdiction clearly undermined the sentencing determination for the petitioner. See, Smith V. Murray, 106 S.Ct. 2661, 2668 (1986); Commonwealth V. Wayne, 414 Mass. 218 (1993).

In Wayne W., the Court stated: "Part B (transfer) hearings are fully adversary . . . the Commonwealth seeks transfer; the juvenile seeks to remain in the juvenile justice system. In a murder case, the outcome of these proceedings will, in the event of conviction, usually mean the difference between a limited period of confinement in a treatment setting and a lengthy term

23

of imprisonment, in such a context a psychiatrist's role cannot be described 'neutral' where he testifies in support of the Commonwealth's goal of transfer." Id. at 230.

In sum, the Appeals Court's decision on grounds one through four are contrary to clearly established federal law determined by the United States Supreme Court.  28 U.S.C., § 2254 (d)(1).

### III.    PETITIONER'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL IS PROPERLY BEFORE THE COURT FOR REVIEW.

The amendment of (AEDPA) 28 U.S.C., § 2254 (i) provides that ineffectiveness, or incompetence of counsel during federal or state collateral <u>post conviction</u> <u>proceedings</u> shall not be a ground for relief in a proceeding arising under section 2254.

According to the amendment of the statute, the petitioner is barred from raising the claim of ineffectiveness on federal or state collateral post-conviction, however, the petitioner has raised the claim of Juvenile Court and trial court ineffectiveness, along with a post-conviction, ineffective assistance of counsel claim.  The petitioner asserts that the Court's failure to reach the merits of this claim will result in a fundamental miscarriage of justice. See, <u>Thomas V. Gibson</u>, 218 F.3d 1213, 1222 (2000).  Raising the claim of ineffective assistance of counsel on petitioner's attorney in Juvenile Court and tria; court are not

24

post-conviction proceedings, and petitioner has demonstrated "cause and prejudice" for juvenile, trial and post-conviction ineffectiveness in (ARGUMENT II) grounds one through four.

In Murray V. Carrier, 106 S.Ct. 2639 (1986), the Supreme Court stated: "Similarly, if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the state, which may not conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance." Cuyler V. Sullivan, 446 U.S. 335, 344 (1980).

Massaro V. United States, 123 S.Ct. 1690 (2003), "We do hold that failure to raise an ineffective assistance of counsel claim on direct appeal does not bar  the claim from being brought in a later appropriate proceeding." Id.  at 1696.

Petitioner has clearly reached the two prong requirement in Strickland V. Washington, 104 S.Ct. 2052 (1984), for his ineffectiveness claims.

There is an additional safeguard against miscarriages of justice in criminal cases, and one not yet recognized in state criminal trials when many of the opinions on which the concurrence relies were written.  That safeguard is the right to effective assitance of counsel, which, as this Court has indicated, may in a particular case be violated by even an isolated error of counsel

if that error is sufficiently egregious and prejudicial. United States V. Cronic, 466 U.S. 648, 657, n. 20 (1984); Strickland, 466 U.S. at 693-696, cited in Murray V. Carrier, 106 S.Ct. 2639, 2649.

The respondent relies on, Thomas V. Gibson, 218 F.3d 1213, 1222 (2000). However, in that case "Thomas asserted that he was denied ineffective assistance of consel in his state post-conviction proceeding," and didn't argue the miscarriage of justice exception, nor assert the "cause and prejudice" exception. See, Wainwright V. Sykes, 97 S.Ct. 2497, 2508 (1977). Here, the petitioner's claims are juvenile, trial and post-conviction, demostrating "cause and prejudice" plus miscarriage of justice exceptions for ineffectiveness in grounds one through four.

The petitioner didn't file a post-conviction in 1996, and would like the Court to be aware of that. See, respondent's memo, at page 16. The respondent's claim is without merit and clearly misplaced.

**IV.     THE MASSACHUSETTS APPEALS COURT INCORRECTLY HELD THAT PETITIONER'S GUILTY PLEA PRECLUDES FEDERAL HABEAS CORPUS RELIEF.**

A guilty plea will not preclude a court from hearing a Constitutional claim that the state should not have tried the defendant at all. Menna V. New York, 423 U.S. 61, 62-63 (1975).

Petitioner raised the claim of defective transfer

of juvenile jurisdiction due to violation of Fifth
Amendment against self-incrimination which is deemed a
miscarriage of justice.  The Massachusetts Appeals
Court held that by pleading guilty to murder the
defendant waived any claims based on events that preceded
the plea.  Commonwealth V. Fanelli, 412 Mass. 497, 500
(1992).  The Fanelli Court said, "A defendant's guilty
plea made knowingly, voluntarily and with the benefit of
competent counsel, waives all non-jurisdictional defects
in the proceedings prior to the entry of the guilty plea.
Id. at 500.

     Petitioner's defective transfer of juvenile
jurisdiction claims are jurisdictional in nature.
Kent V. United States, 86 S.Ct. 1045 (1966).  When a
defendant voluntarily and knowingly pleads guilty at
his trial this constitutes a waiver of all
non-jurisdictional defenses.  Thomas V. United States,
290 F.2d 696, 697 (9th Cir, 1961).  Because the
petitioner's Due Process claims attack the validity of
the dismissal of the juvenile complaint, they are
jurisdiction in nature.  Consequently, his guilty plea
does not preclude the Court's consideration of those
alleged errors.  Cf.  Rachel V. Commonwealth, 369 Mass.
956 (1975).

     Kent V. United States, 86 S.Ct. 1045 (1966),
necessitates a ruling that if petitioner's hearing is
invalid, the Superior Court did not have jurisdiction

to entertain petitioner's plea of guilty.  Also see,
Powell V. Hocker, 453 F.2d 652, 656 (9th Cir. 1971).
Cf.  Rachel V. Commonwealth, 369 Mass. 956 (1975).

Likewise, Due Process claims of the kind raised by
the defendant here are open for review after a plea of
guilty, whereas, where a dismissal is invalid, the
criminal court lacks jurisdiction to accept a guilty
plea.  See, Commonwealth V. Clark, 379 Mass. 623, 626
(1980).  the invalid transfer of juvenile jurisdiction
due to the violation of petitioner's Fifth Amendment
right against self-incrimination precluded the Superior
Court of Jurisdiction to accept petitioner's guilty
plea.

The Massachusetts Appeals Court ruling resulted in
a decision that was contrary to clearly established
federal law as determined by the Supreme  Court of the
United States.

The petitioner asserts that the failure to
consider the merits will result in a fundamental
miscarriage of justice.

## CONCLUSION

For the above stated reasons, the respondents
motion to dismiss should be denied and the writ of
habeas corpus for petitioner granted.

## CERTIFICATE OF SERVICE

I, Gerald M. Hill certify that I have caused to be served a copy of "PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS" on A.A.G. Annette C. Benedetto, One Ashburton Place, Boston, MA 02108, by first-class postage pre-paid mail, on February ___21___, 2005.